UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SEAN HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1104 (RBW) |
| | ) | |
| S. ALLISON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The plaintiff, Sean Harris, filed this civil suit against the defendants, the District of Columbia ("District" or "D.C.") and three officers who work at the District of Columbia Jail ("D.C. Jail" or "Jail"), alleging that in January 2014 the officers violated federal and state laws by "savagely beat[ing]" him and "injur[ing] him physically, mentally, and emotionally." Amended Complaint ("Am. Compl.") ¶ 7. Currently pending before the Court is the Defendants' Motion for Summary Judgment ("Defs.' Summ. J. Mot."), which is opposed by the plaintiff, Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"). Upon careful consideration of the parties' submissions,[1] the Court concludes for the reasons that follow that the defendants' motion must be granted.

**I.   BACKGROUND**

The "[p]laintiff was incarcerated in D.C. Jail on January 8, 2014, when he learned that his grandmother died." Pl.'s Facts ¶ 1. At some point during that day, the plaintiff spoke with the

---

[1] In addition to the documents already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of [the] Defendants' Motion for Summary Judgment ("Defs.' Mem."); (2) the Defendants' Statement of Material Facts Not in Dispute ("Defs.' Facts"); (3) the Plaintiff's Opposition to [the] Defendants' Statement of Uncontroverted, Material Facts ("Pl.'s Facts"); and (4) the Defendants' Reply to [the] Plaintiff's Opposition to the Motion for Summary Judgment ("Defs.' Reply").

1

defendant officers at the jail, requesting that they take him to a "safe cell" in the jail's infirmary instead of his normal inmate cell ("cell"), so that he could potentially receive mental health services, after learning about his grandmother's death. See id. ¶ 2. They denied his request, see id. ¶ 3(A), and thereafter, the plaintiff was handcuffed and escorted to his cell[2] by two of the three defendant officers, see id. ¶ 3(B); see also Pl.'s Opp'n, Exhibit ("Ex.") 1 (Defendant Officer Allison's Discovery Responses) at 6; Pl.'s Opp'n, Ex. 3 (Defendant Officer Hargraves' Discovery Responses) at 6.[3] Upon arriving at his cell, the two defendant officers removed the handcuffs and placed the plaintiff in his cell. Pl.'s Facts ¶ 4. However, the plaintiff refused to remain inside his cell. Id. ("[The plaintiff] refused to go inside his cell . . . ."). Rather, he insisted on going to the safe cell, believing that going to the safe cell was "protocol" for individuals with mental health complaints and that the protocol was not being followed. Id. (citing Pl.'s Opp'n, Ex. 4 (Deposition of Sean Harris ("Harris Dep.")) at 46, 47, 67, 69). Moreover, he also felt unsafe when he was with his cellmate. See Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 46:16-47:2. Based on these perspectives, the plaintiff "came out of [his] cell," Pl.'s Facts ¶ 5; see also Pl.'s Opp'n at 5 ("[The plaintiff] came out of the cell."), and was physically restrained ultimately by all three of the defendant officers,[4] see Pl.'s Facts ¶ 5; see also Pl.'s Opp'n, Ex. 2 (Defendant Officer Walker's Discovery Responses) at 6. After the defendant officers subdued the plaintiff, they took him to the infirmary, where he was examined by a

---

[2] Precisely where the conversation between the plaintiff and the defendant officers occurred in the D.C. Jail is unclear. In any event, the location is immaterial to the resolution of the pending motion.

[3] The plaintiff faults the defendants for deficiencies in their discovery responses. See Pl.'s Opp'n at 5. However, no motion to compel is before the Court, and if there were one, it would be untimely. See, e.g., Reshard v. Peters, 579 F. Supp. 2d 57, 68 n.11 (D.D.C. 2008) (Walton, J.) ("The Court . . . declines to delay resolution of the defendant's summary judgment motion to afford the plaintiff the opportunity to conduct discovery." (citations omitted)), aff'd sub nom. Reshard v. LaHood, 358 F. App'x 196 (D.C. Cir. 2009); Thomas v. Paulson, 507 F. Supp. 2d 59, 80-81 (D.D.C. 2007) (Walton, J.).

[4] After the initial encounter with two of the defendant officers, the third defendant officer joined this alleged assault. See, e.g., Pl.'s Facts ¶ 5.

doctor.  See Pl.'s Facts ¶ 5; see also Defs.' Summ. J. Mot., Ex. 4 (January 8, 2014 Medical Note ("Jan. 8, 2014 Medical Note")) at 1.  According to the doctor, the plaintiff suffered neither "acute lesion[s]" nor "gross edema/ecchymosis," Defs.' Summ. J. Mot., Ex. 4 (Jan. 8, 2014 Medical Note) at 1, and he complained only of experiencing "neck pain" and "elbow pain."  Id.  The plaintiff insists that he also experienced pain in his back and legs.  See Pl.'s Facts ¶ 6.

The encounter with the three defendant officers resulted in the filing of this case by the plaintiff.

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'"  Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In reviewing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255 (citation omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  Id.  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (one ellipsis omitted) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment; instead "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

And significant to this case, where the court has the benefit of video evidence, as it does here, it should "view[] the facts in the light depicted by the videotape" and need not rely on "visible fiction" when the non-moving party's version of events is "so utterly discredited by the record that no reasonable jury could have believed [it]." Scott v. Harris, 550 U.S. 372, 380-81 (2007).

### III.   ANALYSIS

#### A.   The Plaintiff's Eighth Amendment Claim

According to the complaint, the three defendant officers "used excessive force against [the plaintiff] in violation of . . . the Fourth Amendment" of the Constitution. Am. Compl. ¶ 19. As an initial matter, the Court concludes that the plaintiff has failed to state a claim under the Fourth Amendment because he does not dispute that he was "incarcerated" at D.C. Jail on the day of the alleged altercation between him and the defendant officers. Pl.'s Facts. ¶ 1. Given his

4

status as a convicted prisoner,[5] the plaintiff's claim of excessive force must derive from the Eighth Amendment, and not the Fourth Amendment, of the Constitution. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified.'" (ellipses omitted) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986))); Hamlett v. Mattox, No. 90-CV-55 (OG), 1990 WL 236103, at *3 (D.D.C. Dec. 21, 1990) ("In Graham, the Supreme Court indicated that the Eight[h] Amendment does not provide protection against claims of excessive force until after conviction." (citation omitted)). Because the plaintiff has not sought leave of the Court to cure this deficiency, and it will not now allow him to amend his complaint through his summary judgment submissions, e.g., Tuttle v. Jewell, _ F. Supp. 3d _, _, 2016 WL 1048775, at *11 n.18 (D.D.C. 2016) ("It is well-established that a party may not amend a complaint through summary judgment briefing." (citing District of Columbia v. Barrie, 741 F. Supp. 2d 250, 263 (D.D.C. 2010))); Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz, 31 F. Supp. 3d 237, 274 (D.D.C. 2014) (same), summary judgment must be granted in favor of the defendant officers. And the same result would be required even if the plaintiff had properly pleaded an excessive force claim under the Eighth Amendment.[6]

---

[5] The Court was unsure of the plaintiff's prisoner status at D.C. Jail on the day of the alleged incident based on the summary judgment filings, so it asked the parties to clarify his status. See The Parties' Response to the Court's Order Requesting Clarification of Plaintiff's Incarceration Status at 1. The parties responded, representing that on "the date of the events alleged in the [c]omplaint," the plaintiff "was in the midst of serving a post-conviction sentence at D.C. Jail." Id.

[6] The Court notes that the plaintiff cites in his complaint 42 U.S.C. § 1983 (2012), in support of his excessive force claim. See Am. Compl. at 5. But "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham, 490 U.S. at 393-94 (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "In addressing an excessive force claim brought under § 1983, [our] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Id. at 394 (citing Baker, 443 U.S. at 140). Here, the constitutional right is "the Eighth Amendment's ban on cruel and unusual punishments . . . ." Id.

"The Eighth Amendment bars the infliction of 'cruel and unusual punishments.'" Chandler v. D.C. Dep't of Corr., 145 F.3d 1355, 1360 (D.C. Cir. 1998) (quoting U.S. Const. amend. VIII). "The Supreme Court has recognized two categories of prisoner cases as actionable under the [Eighth] [A]mendment: complaints regarding prisoners' conditions of confinement, and those alleging excessive use of force."[7] Id. (citations omitted). There are "subjective" and "objective" elements to these cases. See Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 156 (D.D.C. 2007) (quoting Collins v. Seeman, 462 F.3d 757, 760-61 (7th Cir. 2006)). "Thus, courts considering a prisoner's [Eighth Amendment] claim must ask both [(1)] if 'the officials acted with a sufficiently culpable state of mind' and [(2)]) if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)). In the context of an excessive force claim under the Eighth Amendment, "the prisoner must prove that a government official acted 'maliciously and sadistically for the very purpose of causing harm,' and that the consequent injury was more than de minimis." Chandler, 145 F.3d at 1360 (quoting Whitley, 475 U.S. at 320-21) (citing Hudson, 503 U.S. at 9-10); see also Wilson, 501 U.S. at 302 (a "very high state of mind" is required in cases involving government officials who "act in response to a prison disturbance" because "their actions are necessarily taken 'in haste, under pressure,' and balanced against 'competing institutional concerns for the safety of prison staff or other inmates'" (quoting Whitley, 475 U.S. at 320)). Factors to consider in making this subjective inquiry are the extent of the injuries suffered by the inmate, "the need for application

---

[7] Through the plaintiff's summary judgment submissions, he apparently attempts to make out a conditions of confinement case under the Eighth Amendment. See, e.g., Pl.'s Opp'n at 11 ("[T]he defendant[] [officers] refused a legitimate request for medical treatment from a suicidal inmate, and exacerbated the situation instead of resolving it."). Again, the Court will not consider such a case absent a proper amendment to the complaint, which cannot be made through summary judgment submissions, e.g., Tuttle, _ F. Supp. 3d at _, 2016 WL 1048775, at *11 n.18; Gaubatz, 31 F. Supp. 3d at 274, especially where the complaint is predicated entirely on the defendant officers' alleged assault rather than their alleged refusal to take him to a "safe cell."

of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). The objective inquiry that must be made is "contextual," id. at 8, and is satisfied where there is more than a "de minimis use[] of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind,'" id. at 10 (quoting Whitley, 475 U.S. at 327). Courts must bear in mind that the excessive force claim "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or [applied] maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d. Cir. 1973)); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) ("The 'core judicial inquiry,' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Hudson, 503 U.S. at 7)); id. at 38 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." (emphasis added)).

    Here, viewing the facts in the light depicted by the videotape evidence, no reasonable jury would find that the defendant officers used excessive force against the plaintiff in January 2014. See generally Defs.' Summ. J. Mot., Ex. 2 (Videotape).[8] Specifically, no reasonable inference can be drawn that the defendant officers acted maliciously and sadistically for the very purpose of causing harm to the plaintiff. The videotape clearly shows the following: the jail opening the plaintiff's cell door, id. at 20:01:46, the plaintiff stepping outside his cell, id. at

---

[8] The defendants mailed the videotape to the Court and provided instructions for viewing the videotape. In citing particular parts of the videotape, the Court will use the timestamp associated with the footage on the videotape, which begins at "20:00:59"—presumably the alleged altercation occurred shortly after 8:00 p.m. on January 8, 2014.

7

20:01:52, the plaintiff walking away from his cell, with the cell door closing behind him, id. at 20:01:55-20:02:04, two defendant officers, as well as a non-party officer, escorting the plaintiff back to his cell while handcuffed,[9] id. at 20:03:02-20:03:05, the plaintiff entering his cell, id. at 20:03:06, one defendant officer removing the handcuffs from the plaintiff while he is inside his cell, id. at 20:03:15-20:03:40, the plaintiff stepping outside of his cell and toward the officers, id. at 20:03:46, one of the defendant officers shoving the plaintiff against a wall inside his cell, id. at 20:03:47, the plaintiff pinned against the wall as his cell door was closing, id. at 20:03:48-20:03:50, the cell door closing as the plaintiff was inside his cell, id. at 20:03:52, the plaintiff stepping outside of his cell completely as the door was closing, which prompted the two defendant officers to begin physically restraining the plaintiff outside of his cell, id. at 20:03:53-20:03:46, the third defendant officer joining the efforts to restrain the plaintiff, id. at 20:03:47, and the plaintiff finally being restrained, handcuffed, and escorted away from his cell,[10] id. at 20:04:24-20:05:08. The videotape also shows the plaintiff resisting efforts to restrain him and that he could not be subdued without physical force. Id. at 20:03:54-20:05:00. The need for force resulted from the plaintiff's refusal to remain inside his cell, see Defs.' Summ. J. Mot., Ex. 2 (Videotape) at 20:03:15-20:03:46, see also Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 68:14-18, coupled with his unwillingness to be restrained by the defendant officers, see Defs.' Summ. J. Mot., Ex. 2 (Videotape) at 20:03:53-20:05:08. Notably, after the defendant officers were ultimately able to restrain the plaintiff, no additional force was used. Id. at 20:05:00-20:05:08; see also Sanks v. Williams, 402 F. App'x 409, 412 (11th Cir. 2010) ("[The defendant] ceased to

---

[9] By this time, his cell door had been reopened and remained open. See, e.g., Defs.' Summ. J. Mot., Ex. 2 (Videotape) at 20:02:05.

[10] Two additional, non-party officers arrived at the scene after the plaintiff had been subdued by the three defendant officers. Defs.' Summ. J. Mot., Ex. 2 (Videotape) at 20:04:46-20:04:57.

8

use force when [the plaintiff] stopped resisting, demonstrating not that he was acting maliciously intending to cause harm, but rather acting in good faith to restore order."). Moreover, the extent of the plaintiff's injuries from the physical altercation were minor, see Wilkins, 559 U.S. at 37 ("The extent of injury may also provide some indication of the amount of force applied."), and no greater than can be expected from his choice to disobey instructions to remain in his cell, see Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 63:4-13 (plaintiff's neck, back, and legs hurt, but it was not "[n]umber 10 pain")[11]; Defs.' Summ. J. Mot., Ex. 4 (Jan. 8, 2014 Medical Note) at 1 (contemporaneous medical report indicating that plaintiff had no acute lesions or "gross edema/acchymosis," just neck and elbow pain). Thus, the record reasonably demonstrates that the defendant officers acted in good-faith to obtain compliance with their instructions and that their actions were not the product of malicious and sadistic intent to cause the plaintiff harm. See Whitley, 475 U.S. at 322 ("[D]eference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline."); Scroggins v. Davis, 346 F. App'x 504, 505 (11th Cir. 2009) ("While being escorted from his cell to a place where he could be searched for contraband, [the plaintiff] disobeyed a direct order and got involved in a scuffle with the guards, during which he made an aggressive

---

[11] The plaintiff represents that he underwent physical therapy for lingering pain in his neck, resulting from the altercation with the defendant officers. See Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 70:19-72:1 (treatment received about twice a week for a little over a half year). But there is no medical evidence—other than the plaintiff's own representations—that relates the physical therapy for his neck to any injury sustained as a result of the physical altercation with the defendant officers. See, e.g., Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012) ("It is important that . . . nothing evidences that he suffered permanent injury or debilitating pain." (citation omitted)). Even assuming existence of evidence showing his attendance at physical therapy, a reasonable jury could not conclude that any neck pain the plaintiff was experiencing was severe, as he was only instructed to place "ice" and "heat" on his neck during therapy. See Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 70:19-72:1; see also Whitley, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."); Johnson v. Moody, 206 F. App'x 880, 884-85 (11th Cir. 2006) (medical "treat[ment] for more than five months" did not demonstrate more than de minimis injury because "medical records [belied]" that claim).

9

move toward one of them. In those circumstances, the force used to subdue [the plaintiff] was not excessive."); Lockett v. Suardini, 526 F.3d 866, 876 (6th Cir. 2008) ("Shoving, grabbing, and bending back two of [the prisoner's] fingers also required only minimal force and was reasonably related to the need for forcibly bringing [the prisoner] under control and returning him to his cell. This conclusion is reinforced by the fact that [the prisoner], by his own account, suffered at best only 'minor lacerations and cuts,' and that undisputed evidence showed no dislocation or fracture in his hand." (citations omitted)); Stokes v. Foster, 39 F.3d 1188 (9th Cir. 1994) ("[The plaintiff] has submitted no evidence that the force used against him was applied maliciously and sadistically for the purpose of causing harm. The record reflects that [the plaintiff] refused to obey an order that he should immediately return to his cell and that he also resisted orders to stand still while [a defendant officer] attempted to handcuff him. [The defendant officer] used force only as a result of this resistance and the force he used was an approved method to combat physical resistance. Finally, the record reflects that [the plaintiff] hit his head against a wall due to his resisting [the defendant officer's] attempt to handcuff him and not due to an intentional act on [the defendant officer's] part. Because [the defendant officer] could only restore order by restraining and handcuffing [the plaintiff], [his] claim of excessive force is deficient as he has failed to show a constitutional violation." (citations omitted)); Richardson v. Rupert, No. 14-CV-1415 (JJH), 2016 WL 951536, at *1 (N.D. Ohio Mar. 14, 2016) (no excessive force where the plaintiff was subdued with pepper spray after he refused to obey several instructions to return to his cell because he "demand[ed] to be placed in a private cell under suicide watch"); Baez v. Lancaster County, No. 09-CV-2745, 2011 WL 4948891, at *9 (E.D. Pa. Oct. 18, 2011) (granting summary judgment to defendants on excessive force claim where an electronic body immobilization device was used against the prisoner and there was a

physical struggle between the prisoner and the prison officers, as a result of the prisoner's repeated refusal to obey instructions to return to his cell), aff'd, 487 F. App'x 30 (3d Cir. 2012); Willhoite v. James, Civ. A. No. G-09-5, 2011 WL 4500037, at *5 (S.D. Tex. Sept. 27, 2011) (granting summary judgment for defendants where cell "door opened," "the plaintiff attempted to exit his cell," a defendant officer "pushed him back into his cell to subdue him[,] and the plaintiff escalated the situation," necessitating "two additional officers to enter the cell and help place the plaintiff on the ground so that he could be handcuffed"); Shelton v. Chorley, No. 07-CV-560-MHM, 2011 WL 1253655, at *6 (E.D. Cal. Mar. 31, 2011) ("[The] [p]laintiff's insubordination, agitated state, and decision to quickly turn his body away from [the] [d]efendant created a potentially dangerous situation necessitating the use of force like that applied by [the] [d]efendant. . . . [The] [p]laintiff's belief in the correctness of his position [regarding jail policy] did not give [the] [p]laintiff the right to disobey [the] [d]efendant's orders and does not therefore explain why the application of force was unnecessary or excessive."), aff'd, 487 F. App'x 388 (9th Cir. 2012); Murray v. Goord, 668 F. Supp. 2d 344, 361-62 (N.D.N.Y. 2009) (adopting magistrate judge's conclusion of no excessive force where "the only force exerted by corrections officers occurred when [the] plaintiff attempted to exit the cell as the door was being closed"); Stevenson v. Harmon, No. 07-CV-277 (PCL), 2009 WL 667198, at *5 (S.D. Cal. Mar. 13, 2009) ("There is no dispute that while [the] [p]laintiff was being escorted back from the medical examination, he again refused to comply with the officer's order to proceed to his cell. Specifically, after being told that a second medical examination would be conducted at his cell, [the] [p]laintiff stopped and turned back towards the medical unit without being given permission to do so. [The] [p]laintiff's refusal to follow the officer's directives, particularly given his earlier disobedience, again created a need for the use of some force 'to maintain or

restore discipline.'" (citation omitted) (quoting White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990))), aff'd, 406 F. App'x 97 (9th Cir. 2010).  And a different conclusion is not required even if one of the defendant officers punched him twice during the altercation.[12]  See, e.g., Simms v. Jackson, 91 F.3d 133 (4th Cir. 1996) (no excessive force where defendant officers had to "subdue the struggling plaintiff by forcing him to the ground" and punching the plaintiff in the face).  And because no reasonable jury could find that the defendant officers acted with the requisite intent to harm the plaintiff, see Wilson, 501 U.S. at 302 ("very high state of mind"), the Court need not assess whether a reasonable jury could find that the injuries sustained by the plaintiff were more than de minimis.

Under the circumstances presented here, the defendant officers are entitled to summary judgment on the plaintiff's excessive force claim.  See, e.g., Green v. Denning, 465 F. App'x 804, 807 (10th Cir. 2012) (affirming summary judgment where "[t]he undisputed facts in the record show that [the plaintiff] had recently exhibited erratic behavior, was outside of his cell, and refused to return," and so "the decision to bring [the plaintiff] to the ground was appropriate despite the injuries he apparently suffered"); Witte v. Culton, No. 11-CV-2036 (ERW), 2013 WL 4666334, at *6 (E.D. Mo. Aug. 30, 2013) (granting summary judgment against plaintiff on excessive force claim where record established that the defendant officer escorted the plaintiff to his new cell, the plaintiff refused and "moved away from [the] defendant's escort," the defendant "perceived a sudden movement and reasonably believed [that the] [p]laintiff was attempting to lunge toward him," and the defendant "subdued [the] [p]laintiff by taking control of . . . [him]"); Maye v. Thomas, No. 12-CV-2478-LSC, 2015 WL 2408101, at *5 (N.D. Ala. May 20, 2015)

---

[12]  According to the plaintiff, these punches were not full swings and only "stung" him.  Pl.'s Opp'n, Ex. 4 (Harris Dep.) at 74:6-19; see also id. at 60:22-61:4.  The punches also did not cause him to bleed or swell.  See id. at 74:6-19.  The Court notes that in viewing the videotape, it was unable to see any of the defendant officers punching the plaintiff.

(accepting magistrate judge's ruling: "The court will not second-guess a prison official's use of force in response to a violent disturbance and resistance by prisoners unless that use of force is so excessive as to be unmistakably malicious and sadistic.  The use of force by prison officials to compel compliance with security and safety needs in the prison is, unfortunately, a common if not frequent occurrence.  Such uses of force to maintain order and discipline are not unconstitutional unless the force is so great or so unnecessary that it can be nothing more than malicious and sadistic.  Where the evidence leaves room for the conclusion that force was applied for the legitimate purpose of restoring or maintaining order, there is no genuine issue of fact precluding summary judgment."); Foster v. Verkouteren, No. 08-CV-554-CAB, 2009 WL 2485369, at *7 (S.D. Cal. Aug. 12, 2009) (granting summary judgment to defendant where the defendant used force that "was necessary to bring [the] [p]laintiff in compliance with the officers' order to return to his cell"), aff'd, 405 F. App'x 102 (9th Cir. 2010).

### B.     The Plaintiff's Assault Claims[13]

The plaintiff also asserts common law assault claims against the defendant officers, as well as against the District.  Am. Compl. ¶¶ 10-17.  In response, the defendants assert the affirmative defense of privilege.  See Defs.' Mem. at 9.  The Court agrees with the defendants.

In the District of Columbia, an assault is "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim."  Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993) (citations omitted).  In a case involving prison officials restraining a convicted prisoner, the "technical requirements" of an assault claim are

---

[13] Dismissal of the Eighth Amendment claim destroys the subject matter jurisdiction of the Court.  See, e.g., Armbruster v. Frost, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) ("[T]he basis for federal jurisdiction has fallen away after dismissal of the Section 1983 claims . . . .").  Nevertheless, the Court will retain supplemental jurisdiction over the remaining common law assault claims given their similarity to the Eighth Amendment claim.  See id. (retaining supplemental jurisdiction of assault and battery claims because their analysis was similar to that of the federal claims that were dismissed).

13

"[u]sually . . . satisfied . . . ." District of Columbia v. Chinn, 839 A.2d 701, 705-06 (D.C. 2003). Liability follows from the assault claim if the defense of privilege is not applicable. See id. at 706. More specifically, prison officials have a qualified privilege to use force to restore or maintain discipline in a prison, provided that the force employed was not excessive. See id.; see also Spicer v. District of Columbia, 916 F. Supp. 2d 1, 2, 4 (D.D.C. 2013) (suggesting that claims of assault and battery arising from conduct of D.C. Jail officials are colorable only if excessive force has been used). Yet, the standard for what constitutes excessive force in the context of incarcerated prisoners—so far as the Court is aware—has not been clearly expounded by any court in the District of Columbia. Although the parties appear to agree, see Defs.' Mem. at 9; Pl.'s Opp'n at 12, as well as some members of this Court, see Taylor v. United States, 103 F. Supp. 3d 87, 91, 94 (D.D.C. 2015), that the defendants' conduct should be assessed under a standard of reasonableness, consistent with an excessive force analysis under the Fourth Amendment, i.e., how reasonable prison officials would have conducted themselves standing in the shoes of the defendant officers, this Court disagrees. The District of Columbia Court of Appeals ("D.C. Court of Appeals") has explained, citing Graham, 490 U.S. at 396-97, that an assault claim against D.C. law enforcement officials should be held to the same standard as its federal counterpart—an excessive force claim under 42 U.S.C. § 1983. See Etheredge, 635 A.2d at 916 n.10 (noting similarity of privilege defense raised against both assault and excessive force claims under Section 1983 and that the outcome of both claims should "not turn on the forum in which the plaintiff . . . seeks redress or on the legal authorities on which he relies"); see also Okpara v. District of Columbia, _ F. Supp. 3d _, _, 2016 WL 1170926, at *5 (D.D.C. 2016) (qualified privilege defense to common law assault claim has "standard . . . similar to the excessive force standard applied in the Section 1983 context" (quoting Rogala v. District of

14

Columbia, 161 F.3d 44, 57 (D.C. Cir. 1998))). This counsels the Court to apply the Eighth Amendment excessive force standard to the qualified privilege defense asserted against the assault claims at issue in this case. See Graham, 490 U.S. at 393-94 (Section 1983 claim predicated on "excessive force to subdue convicted prisoner [is] analyzed under an Eighth Amendment standard" (citing Whitley, 475 U.S. at 318-26)). And as the Court has already explained, using that standard, the defendant officers did not apply excessive force when they restrained the plaintiff after he refused to remain in his cell and refused to allow them to restrain him. Therefore, the assault claims must also fail as a matter of law, as the defendant officers' conduct was privileged.

The outcome under the more forgiving reasonableness standard for a qualified privilege defense to these assault claims would not aid the plaintiff's efforts to avoid summary judgment against him. Under this standard, the defendants' summary judgment motion must be denied if "a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable [prison official] could have believed in the lawfulness of his actions."[14] Okpara, _ F. Supp. 3d at _, 2016 WL 1170926, at *5 (quoting DeGraff v. District of Columbia, 120 F.3d 298, 302 (D.C. Cir. 1997)). Again, in light of the videotape evidence, the Court concludes that no reasonable jury could find that the defendant officers' efforts to restrain the plaintiff were conspicuously unlawful. Cf. id. (granting summary judgment in favor of defendants because "rough treatment" did not amount to excessive force); Cromartie v. District of Columbia, 729 F. Supp. 2d 281, 285-86 (D.D.C. 2010) (granting summary judgment in favor of defendants and finding no excessive force where the arrested plaintiff "disobeyed" officer instructions and had

---

[14] The D.C. Court of Appeals has not resolved the question of who bears the burden of production and persuasion when the privilege is asserted. Evans-Reid v. District of Columbia, 930 A.2d 930, 939 n.9 (D.C. 2007). Because the defendants have met both burdens as a matter of law, the Court need not tackle an issue the D.C. Court of Appeals has opted not to resolve.

been "'slammed' to the ground, handcuffed, and forcibly kept on the ground"), aff'd, 479 F. App'x 355 (D.C. Cir. 2012). Accordingly, none of the plaintiff's claims survive summary judgment.[15]

## IV. CONCLUSION

In sum, a reasonable jury reviewing the videotape evidence in this case could not conclude that the defendant officers violated the Eighth Amendment and acted maliciously or sadistically in subduing the plaintiff, who refused to remain in his cell at D.C. Jail and then would not allow himself to be restrained by them without force. Similarly, the videotape evidence would not permit a reasonable jury to conclude that the defendant officers assaulted the plaintiff because they used force proportional to the circumstances confronting them, and thus their conduct was privileged, shielding both the officers and the District from liability.

**SO ORDERED** this 6th day of June, 2016.

REGGIE B. WALTON
United States District Judge

---

[15] Because the assault claim against the District is dependent on the assault claims against the defendant officers, that claim against the District also does not survive summary judgment.